No. 21-3158

_____

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

_____

| | | |
|---|---|---|
| **KRISTIE ANN ALLEY,** | ) | **Appeal from the United States** |
| | ) | **District Court, Southern District** |
| **Plaintiff-Appellant,** | ) | **of Indiana** |
| | ) | |
| **vs.** | ) | **Cause No. 1:20-cv-00117-RLY-DLP** |
| | ) | |
| **PENGUIN RANDOM HOUSE,** | ) | **Honorable Richard L. Young,** |
| | ) | **Judge; Honorable Doris L. Pryor,** |
| **Defendant-Appellee.** | ) | **Magistrate Judge** |

_____

**Appeal from the United States District Court
for the Southern District of Indiana
Case No. 1:20-cv-00117-RLY-DLP
The Honorable Judge Richard L. Young
The Honorable Magistrate Judge Doris L. Pryor**

_____

**BRIEF AND
REQUIRED SHORT APPENDIX OF
PLAINTIFF-APPELLANT, KRISTIE ANN ALLEY**

_____

Adam Lenkowsky, Ind. Atty. No. 24277-49
**ROBERTS LITIGATION GROUP**
118 North Delaware Street
Indianapolis, Indiana 46204
Telephone: (317) 631-0172
Facsimile:  (317) 631-0178
Email: alenkowsky@robertslitigation.com

Attorney for Appellant

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

**Appellate Court No.: 21-3158**

**Short Caption: Alley v. Penguin Random House**

(1) The full name of every party the attorney represents in the case:

**Kristie Ann Alley**

(2) The name of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency):

**Roberts Litigation Group, 118 North Delaware Street, Indianapolis, Indiana 46204**

(3) If the party or amicus is a corporation: i) Identify all its parent corporations, if any: **N/A**

ii) List any publicly held company that owns 10% or more of the party's or amicus' stock: **N/A**

(4) Please provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases: **N/A**

(5) Provide Debtor information required by FRAP 26.1(c) 1 & 2: **N/A**

Respectfully submitted,

**ROBERTS LITIGATION GROUP**

/s/ Adam Lenkowsky

Adam Lenkowsky
Indiana Attorney #24277-49
Attorney for Appellant

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d): **Yes**

Address:     Roberts Litigation Group
             118 North Delaware Street
             Indianapolis, Indiana 46204
             Telephone:  (317) 631-0172
             Facsimile:  (317) 631-0178
             Email:     alenkowsky@robertslitigation.com

# TABLE OF CONTENTS

Cover.......................................................................................................i

Disclosure Statement..............................................................................ii

Table of Contents...................................................................................iii

Table of Authorities................................................................................v

Jurisdictional Statement...........................................................................1

    A. District Court's Jurisdiction............................................................1

    B. Appellate Jurisdiction....................................................................1

    C. Filing Dates..................................................................................1

    D. Assertion Regarding Final Order....................................................2

Statement of the Issues............................................................................2

Statement of the Case.............................................................................2

    A. Nature of the Case........................................................................2

    B. Course of Proceedings...................................................................2

    C. Statement of Facts........................................................................3

        1. Allegations are Made Against Lillard............................................6

        2. Alley is Demoted......................................................................7

        3. Lillard is Terminated After PRH Receives a Written Complaint.......8

Summary of the Argument........................................................................8

Argument..............................................................................................9

    A. The District Court Erred in Granting PRH's Motion to Dismiss..........9

    B. The District Court Erred in Granting PRH's Motion for Summary
       Judgement..................................................................................12

Conclusion............................................................................................15

Certificate of Compliance........................................................................16

Certificate of Service....................................................................................17

Appellant's Statement Regarding Materials Required Pursuant to Circuit Rules 30(a) and 30(b)....................................................................................18

Short Appendix Required Pursuant to Circuit Rule 30................................19

## TABLE OF AUTHORITIES

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)......................................12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)........................................9

*Berry v. Chicago Transit Auth.*, 618 F.3d 688 (7th Cir. 2010).........................12

*Burke v. Bd. of Directors of Monroe County Public Library*,
709 N.E.2d 1036 (Ind. Ct. App. 1999)..........................................................10

*Community Foundation v. Miranda*, 120 N.E.3d 1090 (Ind. Ct. App. 2019)......10

*Duldulao v. Saint Mary of Nazareth Hospital Center*,
505 N.E.2d 314 (Ill. 1987).............................................................................11

*Duty v. Boys and Girls Club of Porter Cty.*,
23 N.E.3d 768 (Ind. Ct. App. 2014)...............................................................10

*Harris v. Brewer*, 49 N.E.3d 632 (Ind. Ct. App. 2015)....................................11

*Hayes v. Trustees of Indiana University*,
902 N.E.2d 303 (Ind. Ct. App. 2009)........................................................10,11

*Kelly v. Levandoski*, 825 N.E.2d 850 (Ind. Ct. App. 2005)...............................9

*Killingsworth vv. HSBC Bank Nevada, N.A.*, 507 F.3d 614 (7th Cir. 2007).........9

*Lalvani v. Cook County*, 269 F.3d 785 (7th Cir. 2001)...................................13

*McCalmert v. Eli Lilly & Co.*, 860 N.E.2d 884 (Ind. Ct. App. 2007)...................10

*McCready v. eBay, Inc.*, 453 F.3d 882 (7th Cir. 2006)....................................9

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)................................13

*Orr v. Westminster Village North, Inc.*, 693 N.E.2d 712 (Ind. 1997)..........9,10,11

*Ortiz v. Werner Enterprises*, 834 F.3d 760 (7th Cir. 2016).........................13.15

*Outlaw v. Newkirk*, 259 F.3d 833(7th Cir. 2001)...........................................12

*Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143 (7th Cir. 2010)....................12

*Rozumalski v. WF Baird & Associates LTD*, 937 F.3d 919 (7th Cir. 2019)...12,13

*Uhlman v. Panares*, 908 N.E.2d 650 (Ind. Ct. App. 2009)...............................10

*Wynkoop v. Town of Cedar Lake*, 970 N.E.2d 230 (Ind. Ct. App. 2012)...........11

## Statutes

28 U.S.C. § 1291..................................................................................1

28 U.S.C. § 1331..................................................................................1

28 U.S.C. § 1367..................................................................................1

42 U.S.C. § 2000e................................................................................1

## Court Rules

Fed. R. Civ. Pro. 8...............................................................................9

Fed. R. Civ. Pro. 12.............................................................................9

Fed. R. Civ. Pro. 56...........................................................................12

## JURISDICTIONAL STATEMENT

### A. District Court's Jurisdiction

The Plaintiff-Appellant Kristie Ann Alley's (Alley) Complaint was brought pursuant to 42 U.S.C. § 2000e and the common law of the State of Indiana. The District Court had federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

### B. Appellate Jurisdiction

The United States Court of Appeals for the Seventh Circuit has jurisdiction to review a final decision of the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1291 in this case.

### C. Filing Dates

Alley seeks review of the District Court's Order granting Penguin Random House's (PRH) Motion to Dismiss and Motion for Summary Judgment. Alley filed her Complaint on January 13, 2020, and her Amended Complaint on January 23, 2020. (Dkts. 1, 5) On March 2, 2020, PRH filed its Motion to Dismiss and supporting Memorandum of Law.  (Dkts. 14, 15) Alley filed her Response on March 18, 2020. (Dkt. 22) PRH filed its Reply Brief on March 25, 2020. (Dkt. 30) Alley filed a Surreply on March 26, 2020. (Dkt. 32) Parties consented to the Magistrate Judge relative to the Motion to Dismiss only on March 17, 2020. (Dkt. 21) The Motion to Dismiss was referred to the Magistrate Judge on March 18, 2020. (Dkt. 25) The Magistrate Judge granted the Motion to Dismiss on November 23, 2020. (Dkt. 52)

PRH filed its Motion for Summary Judgment and supporting Memorandum of Law on January 13, 2021. (Dkts. 59, 60) Alley filed her

Response on March 11, 2021. (Dkt. 64) PRH filed its Reply Brief on March 25, 2021. (Dkt. 69) The District Court granted PRH's Motion for Summary Judgment and entered Final Judgment on November 3, 2021. (Dkts. 79, 80)

Alley filed her Notice of Appeal on November 18, 2021. (Dkt. 82)

**D. Assertion Regarding Final Order**

This is an Appeal from a Final Order disposing of all of the claims and parties from a lawsuit brought by Alley.

## STATEMENT OF THE ISSUES

1. Whether the District Court erred when it granted PRH's Motion to Dismiss on Alley's claim that she had been demoted in violation of a contractual agreement embodied in PRH's Code of Conduct.

2. Whether the District Court erred when it granted PRH's Motion for Summary Judgment on Alley's claim that she was demoted in retaliation for reporting sexual harassment of a co-worker.

## STATEMENT OF THE CASE

**A. Nature of the Case**

This is an Appeal from the District Court's Order finding in favor of PRH on a Motion to Dismiss and a Motion for Summary Judgment.

**B. Course of Proceedings**

Alley began these proceedings on January 13, 2020, when she filed her Complaint. (Dkt. 1) She subsequently amended her Complaint on January 23, 2020. (Dkt. 5) In her Amended Complaint, Alley alleged she was retaliated against and wrongfully demoted in violation of the Code of Conduct when she was demoted from her position as group leader on September 27, 2019. (Id.)

2

PRH filed its Motion to Dismiss on March 2, 2020. (Dkt. 14, 15) PRH also filed an Answer to the Amended Complaint on March 2, 2020. (Dkt. 16) On November 23, 2020, the District Court granted PRH's Motion to Dismiss. (Dkt. 52) Following the close of discovery, PRH filed a Motion for Summary Judgment on January 13, 2021. (Dkt. 59, 60) The District Court granted the Motion for Summary Judgment on November 3, 2021, and entered Final Judgment. (Dkt. 79, 80)

Alley commenced this Appeal on November 18, 2021. (Dkt. 82)

**C. Statement of Facts**

Alley was originally hired as a temporary employee of PRH in July of 2014 and became a full time Order Processor-1 a month later. (Dkt. 64-3, pp. 16-17, 15:21-16:12) Alley's employment was subject to a number of policies, including a Code of Conduct. (Dkt. 5-1) The Code of Conduct "outlines binding minimum standards for responsible behavior toward business partners and the public, as well as for our behavior within the company" for which "[w]e are all obligated to adhere to." (Dkt. 5-1 at 7) In its relevant part, the Code of Conduct requires "an environment in which topics can be discussed openly and without fear of retaliation." (Id.) An entire section of the Code of Conduct is dedicated to free speech:

> We encourage our employees to speak up freely and without fear of retaliation. Retaliation against employees who raise good-faith concerns about misconduct occurring in the company is prohibited.
>
> Being able to speak freely helps to prevent misconduct, and to detect and correct it, should it occur. We therefore value an open work environment where employees can approach their supervisors or management to raise issues or voice criticism without any concerns.

Managers are responsible for encouraging open dialogue and for supporting their employees and addressing their concerns in a fair and impartial manner.

Intimidation or retaliation against employees who in good faith provide reports of suspected or actual misconduct must not be tolerated. Reporting misconduct "in good faith" means that an individual believes that what he or she is asserting is true, whether a subsequent investigation proves the report to be true or not.

If employees feel uncomfortable raising concerns directly with their manager or another person locally, or if their attempts to do so are ineffectual, we encourage them to make use of the resources listed in Section 4.

(Dkt. 5-1 at 13) When Alley decided to work for PRH, she relied on these principles. (Dkt. 5 at 2)

Also of relevance, PRH has an Anti-Harassment and Reporting Procedure. (Dkt. 60-1 at 50-51). The procedure provides that "Any employee who believes they have been subject to conduct in violation of this policy (or who witnesses or learns about such conduct), a member of management, a customer, a vendor, an author, or a visitor, should report such management to their manager, department head or division head, or to a Human Resources representative." Id. Alternatively, employees may report violations by email or anonymously contact the ombudsperson. (Dkt. 64-3 at 45, 44:10-17; at 49, 48:14-24; Dkt. 60-1 at 51)

Starting in around 2014 and continuing for several years, Scott Lillard sexually harassed Alley. (Dkt. 60-1 at 60-64) Alley reported the harassment at one point around 2017 to group leader, Cole Golladay. (Dkt. 64-1 at 17, 63:1-9; 64-1 at 71) Despite having a duty to report this, Golladay did not. (Dkt. 64-1 at 17, 63:13-16) Golladay was not disciplined for failing to report Lillard. (Dkt. 64-

1 at 17, 64:2-5) PRH became aware of this on September 25, 2019, when Golladay emailed Mike Brock. (Dkt. 64-1 at 71)

Alley was promoted a few times starting in 2016. (Dkt. 64-3 at 21, 20:18-23; at 23, 22:7-9) In June 2016, Alley was promoted to a group leader position. (Dkt. 64-3 at 27, 26:24-25) In September 2018, Alley was moved to two different group lead positions on different shifts. (Dkt. 64-3 at 32, 31:3-6; at 32-33, 31:20-32:2) She remained in the group lead position until her demotion on September 27, 2019, the subject of this appeal. (Dkt. 64-3 at 33, 32:7-10) Her duties in that position included overseeing the receiving dock, forklift operators, and Order Processor-3s. (Dkt. 64-3 at 33, 32:12-16) Specifically, this entailed implementing the supervisor's orders, ensuring production goals were met, and moving people as needed. (Dkt. 64-3 at 33, 32:20-25; 64-1 at 6, 20:14-24) As a group leader, Alley was a liaison between employees and supervisors. (Dkt. 64-1 at 6, 20:21-22)

Alley's supervisor was Zach Link, who remained her supervisor until he went on leave in July 2019. (Dkt. 64-3 at 34-36, 33:8-10, 34:22-35:4) In addition to Alley, Elizabeth Hennessy and Scott Lillard also reported to Link as group leaders. (Dkt. 64-3 at 35, 34:14-18) After Link went on leave, Alley, Hennessy, and Lillard took over his duties on a rotating basis. (Dkt. 64-3 at 36, 35:5-14) Alley was removed from the rotation as supervisor on about August 20, 2019, which is not part of this appeal. (Dkt. 64-3 at 42, 41:13-18)

**1. Allegations are Made Against Lillard**

In July and August of 2019, PRH received several anonymous complaints about management. (Dkt. 64-1 at 20, 74:22-75:11) As a result, Robin Sutton and Annette Danek came from corporate headquarters to investigate on September 6, 2019. (Dkt. 64-3 at 120, 119:3-22) While most of the complaints against Lillard dealt with his management style, Sutton and Danek were also told that women were "uneasy" and "uncomfortable" around Lillard, and that he treated women differently than men. (Dkt. 64-1 at 26-27, 100:21-101:5, 105:12-15; Dkt. 64-1 at 73, 77)

On September 13, 2019, Marlene Guzman orally told Alley that Lillard had sexually harassed her.  (Dkt. 64-3 at 96-97, 95:19-96:10) Since Guzman was afraid that she would have to continue to work under Lillard, Guzman and Alley decided the best course of action was to contact the Ombudsperson. (Dkt. 64-3 at 97-98, 96:15-97:6) They also believed that Human Resources would not be sufficient because the recent complaints against Lillard by other employees had not proven fruitful. (Dkt. 64-3 at 98-99, 97:19-98:3; at 72-81)

Alley then requested a written statement from Guzman so she could discuss the matter with the ombudsperson. (Dkt. 64-3 at 100, 99:6-14) She did not receive the statement until September 16 or 17, 2019. (Id. at 99:24-25; Dkt. 64-3 at 192-193) Alley attempted to contact the ombudsperson on September 17, 2019. (Dkt. 64-3 at 55, 54:20-23) Eventually, Alley left a voice message, but did not receive a return call until September 26, 2019. (Dkt. 64-3 at 62, 61:8-12; at 64, 63:6-8) In the meantime, on September 18 and 19, 2019, two other

employees, Emily Felix and Megan Haines, informed human resources that Lillard had sexually harassed Guzman. (Dkt. 64-1 at 31, 119:21-120:5)

### 2. Alley is Demoted

On September 19, 2019, Human Resources Director Bonnie Mann and Senior Vice President Lori DeReza met with Alley because something appeared wrong. (Dkt. 64-3 at 112-113, 111:24-112:13; Dkt. 64-2) At the meeting, Alley disclosed that she had received a statement from Guzman and had also reached out to a former employee who had been harassed by Lillard as well. (Dkt. 64-3 at 113, 112:8-20)

About a week later, on September 27, 2019, Alley met with Supervisor Mike Brock and DeReza. (Dkt. 64-3 at 139, 138:1-7) At the meeting, Alley was told she was being demoted for failing to report sexual harassment allegations.[1] (Dkt. 60-4 at 2). She was removed from her position as group leader, and this resulted a decrease in her wages of 90 cents per hour. (Dkt. 64-3 at 140-141,139: 20-23, 140:7-11)

Interestingly, Alley's Management Journals also changed during this time period. The Management Journal system rates conduct using G/B/N, which stands for good, bad, or neutral. (Dkt. 64-1 at 13, 48:23-49:1) Between August 23 and August 29, 2019, Alley printed out her 2019 Management Journal. (Dkt. 64-3 at 138, 137:2-3) This showed multiple entries designated as N. (Dkt. 64-1

---

[1] At times, PRH has implied that there may have been other reasons why Alley was demoted. However, they never developed this line of argument. When asked why Alley was demoted, Human Resources Director Mann stated that the primary reason was failing to report sexual harassment and that "Ms. Alley wasn't for performance as much as it was for failure to report the harassment." (Dkt. 64-1 at 34, 131:22-132:24)

at 63-64). Alley then printed her journal entries out again on September 29, 2019, and the entries had changed to B. (Dkt. 64-3 at 138, 137:8-9; Dkt. 64-1 at 59-62)

### 3.  Lillard is Terminated After PRH Receives a Written Complaint

As noted above, PRH was aware of sexual harassment concerns with Lillard as a result of the interviews with Sutton and Danek. Lillard's "Goals and Expectations" also contained language requiring him to "refrain[] from physical contact or comments of a personal nature that could be misinterpreted." (Dkt. 64-1 at 86, 87) However, it was not until PRH had received a written statement, prepared at the request of Alley, that it took action. On September 19 or 20, 2019, Lillard was suspended, but he was allowed to work through his shift first. (Dkt. 64-1 at 21, 81:14-18; Dkt. 64-2) Lillard was terminated on September 25 or 26, 2019. (Dkt. 64-1 at 21, 81:18-20)

Additional facts will be supplied as needed.

### SUMMARY OF THE ARGUMENT

First, the District Court erred in granting PRH's Motion to Dismiss. The Code of Conduct created a valid unilateral contract under Indiana law which PRH breached when it demoted Alley. Second, the District Court erred in granting PRH's Motion for Summary Judgment. Considered as a whole, Alley demonstrated a genuine issue of material fact by showing suspicious time, different treatment of a comparator, and attempts to change her records. Under the prevailing standards, this was sufficient evidence to move forward.

## ARGUMENT

## A. The District Court Erred in Granting PRH's Motion to Dismiss

This Court reviews *de novo* a District Court's grant of a motion to dismiss based upon Rule 12(b)(6). *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). A plaintiff's Complaint need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to provide the defendant with "fair notice" of the claim and its basis. Fed. R. Civ. Pro. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007). The Court construes the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in the plaintiff's favor. *Killingsworth vv. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

The District Court concluded that the Code of Conduct did not constitute a unilateral contract because it was more in the form of personnel policies, only contained a vague pledge that retaliation would not be tolerated, and contained no disciplinary enforcement procedures. (Dkt. 52) A unilateral contract arises when "one party makes an offer (or promise) which invites performance by another, and the performance constitutes both acceptance of the offer and consideration." *Orr v. Westminster Village North, Inc.*, 693 N.E.2d 712, 719 n. 11 (Ind. 1997). See *also Kelly v. Levandoski*, 825 N.E.2d 850, 861 (Ind. Ct. App. 2005). However, the District Court's analysis was inconsistent with unilateral contracts.

While Indiana case law has generally found that employee handbooks do not create unilateral contracts, the Code of Conduct is not an employee handbook and contains significant differences. A number of Indiana cases have addressed unilateral contracts in the employment context:

- *Orr*, 693 N.E.2d at 720-721: employee handbook that that applied only in "most cases," "is not intended to be all inclusive," creates exceptions for "major violations," and contains a disclaimer that the handbook is not a contract does not create unilateral contract.

- *Burke v. Bd. of Directors of Monroe County Public Library*, 709 N.E.2d 1036, 1042 (Ind. Ct. App. 1999): handbook that contains disclaimer of contractual relationship does not create unilateral contract. See also *Uhlman v. Panares*, 908 N.E.2d 650, 655 (Ind. Ct. App. 2009); *Duty v. Boys and Girls Club of Porter Cty.*, 23 N.E.3d 768, 773 (Ind. Ct. App. 2014); *Community Foundation v. Miranda*, 120 N.E.3d 1090, 1100 (Ind. Ct. App. 2019).

- *McCalmert v. Eli Lilly & Co.*, 860 N.E.2d 884, 893 (Ind. Ct. App. 2007): employee handbook that states disciplinary action is "handled on an individual basis" and "reserves the right to terminate the employment relationship with an employee at any time, for any reason, without cause or notice" does not create unilateral contract.

- *Hayes v. Trustees of Indiana University*, 902 N.E.2d 303, 313 (Ind. Ct. App. 2009): human resources manual that disclaimed existence of contractual relationship and reserved the right "to modify, to

change, to suspend, or to cancel all or any part of the policies, procedures, and programs" did not constitute a unilateral contract.

- *Wynkoop v. Town of Cedar Lake*, 970 N.E.2d 230, 236 (Ind. Ct. App. 2012): employee handbook that contained contradictory provisions concerning whether "just cause" was necessary to terminate an employee did not contain a "clear promise" sufficient to create a unilateral contract. See also *Harris v. Brewer*, 49 N.E.3d 632, 642 (Ind. Ct. App. 2015).

*Orr* did not specifically adopt a unilateral contract theory in the context of employment cases, but did identify a three-part test adopted by Illinois. Specifically, the Illinois Supreme Court held that a handbook may constitute a unilateral contract where (1) the language of the employee handbook must contain a promise clear enough that an employee would reasonably believe that an offer had been made; (2) the handbook must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing work after learning of the terms of the handbook. *Orr*, 689 N.E.2d at 720 (citing *Duldulao v. Saint Mary of Nazareth Hospital Center*, 505 N.E.2d 314, 318 (Ill. 1987)). *Wynkoop*, 970 N.E.2d at 235-236, later applied the so-called *Duldulao Rule* in Indiana without questioning its existence.

In this case, the Code of Conduct anti-retaliation provision is a unilateral contract. The Code of Conduct creates "binding minimum standards" that PRH employees are "obligated to adhere to."  Unlike the cases cited above, it contains

no disclaimers, exceptions, or contradictory language. Instead, it broadly states that retaliation is prohibited. Alley received this and commenced employment based on the clear promise contained therein. A unilateral contract arose which PRH violated when she was demoted.

## B. The District Court Erred in Granting PRH's Motion for Summary Judgment

This Court conducts a *de novo* review of a District Court's order granting summary judgment. *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 690 (7th Cir. 2010). In a *de novo* review, the record is viewed in the light most favorable to the nonmoving party and all reasonable inferences are drawn in the nonmoving parties favor when determining if there is a genuine issue of material fact as to any element of the claims. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). Summary judgment is appropriate if the record reveals that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). In ruling on a motion for summary judgment, the Court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). All doubts should be resolved in the nonmoving party's favor. Id.

In a retaliation case, the plaintiff must demonstrate that 1) she engaged in protected activity; 2) she suffered an adverse employment action; and 3) a casual connection exists between the two. *Rozumalski v. WF Baird & Associates LTD,*

937 F.3d 919, 924 (7th Cir. 2019). Elements 1 and 2 are undisputed: Alley disclosed to PRH on September 19, 2019 that she had evidence that a co-worker had been sexually harassed by a PRH employee and Alley was demoted on September 27, 2019.

The legal standard to establish causation is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's….[protected activity] caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises*, 834 F.3d 760, 765 (7th Cir. 2016). To present evidence, a plaintiff may use the *McDonnell Douglas* "burden-shifting framework." *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019). However, the *McDonnell Douglas* framework is merely one way of culling relevant evidence needed to demonstrate whether a reasonable factfinder could conclude that an employer engaged in an adverse employment action based on a proscribed factor. *Id.* A plaintiff may also present circumstantial evidence consisting of "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Rozumalski*, 937 F.3d at 924.

In this case, there was easily sufficient evidence to establish causation. First, Alley was demoted eight days after she told PRH that a co-worker had been sexually harassed and that she had received a statement. See *Lalvani v. Cook County*, 269 F.3d 785, 790 (7th Cir. 2001) ("When adverse employment action follows close on the heals of protected expression…the causation element of the *prima facie* case is typically satisfied.") PRH was already aware of Lillard's

behavior toward women from the interview with employees by Sutton and Danek, as well as the documented references in his "Goals and Expectations," but only took action after Alley put in motion a process in which she obtained a written statement, which could no longer be covered up by management.

Second, PRH's claim that Alley was demoted for failing to report sexual harassment is so riddled with holes that it is not deserving of credibility. In around 2017, group leader Golladay failed to report that Lillard had sexually harassed Alley. PRH became aware that Golladay had failed to report this September 25, 2019 when Golladay emailed Mike Brock. When asked why Golladay was not disciplined, Mann stated that Lillard had already been terminated, yet by her own testimony he might not have been terminated until the next day, September 26, 2019.  (Dkt. 64-1 at 17, 64:2-8; at 21, 81:18-20) Further, Alley too was demoted after Lillard was terminated, on September 27, 2019. By failing to report Lillard for a period of over two years, Golladay put countless PRH employees at risk, compared to Alley's six days. It is difficult to fathom PRH's attempt to justify their failure to discipline him. Instead, it was not until Alley had received a written statement from Guzman – which could not be hidden – that PRH decided to demote Alley.

Third, evidence shows that PRH likely adjusted Alley's Management Journals in an attempt to build a record against her to demote her. Contrary to the District Court's conclusion, the entries in the Management Journals were changed between August 23, 2019 and September 29, 2019. Mann alleges that "N" might have been inadvertently entered as "not good." (Dkt. 64-1 at 13, 48:25-

49:5; at 15, 54:19-55:17) However, Mann also claims that Link had to be contacted about one of the changes, and he denied ever being contacted. (Id.; Dkt. 64-4) Finally, the District Court noted that the substance could still be considered negative. Even if this is the case, changing the records still could be considered an attempt to build a record against her for discipline or greater discipline. After all, Golladay was not disciplined for the exact same conduct.

In sum, when the evidence is "evaluated as a whole," Alley has demonstrated a genuine issue of material fact as to whether she was retaliated against. *Ortiz*, 834 F.3d at 766.

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court and remand for Trial.

Respectfully submitted,

**ROBERTS LITIGATION GROUP**

/s/Adam Lenkowsky
Adam Lenkowsky, Ind. Atty. No. 24277-49

Adam Lenkowsky
**ROBERTS LITIGATION GROUP**
118 North Delaware Street
Indianapolis, Indiana 46204
Telephone:  (317) 631-0172
Facsimile:  (317) 631-0178
Email:         alenkowsky@robertslitigation.com

## CERTIFICATE OF COMPLIANCE

This Brief complies with the type-volume limitation of Fed. R. App. Pro 32(a)(7) because it contains 3,820 words, excluding the parts of the brief exempted by Fed. R. App. Pro. 32(f). This brief complies with the typeface requirements of Fed. R. App. Pro. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Word in 12-point font and Bookman Old Style.

/s/Adam Lenkowsky
Adam Lenkowsky

Adam Lenkowsky
**ROBERTS LITIGATION GROUP**
118 North Delaware Street
Indianapolis, Indiana 46204
Telephone:  (317) 631-0172
Facsimile:   (317) 631-0178
Email:        alenkowsky@robertslitigation.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served by electronic service on the following counsel of record on this 17th day of March, 2022:

Michael Padgett
JACKSON LEWIS P.C.

Cheyna Galloway
JACKSON LEWIS P.C.

/s/Adam Lenkowsky
Adam Lenkowsky

Adam Lenkowsky
**ROBERTS LITIGATION GROUP**
118 North Delaware Street
Indianapolis, Indiana 46204
Telephone: (317) 631-0172
Facsimile: (317) 631-0178
Email: alenkowsky@robertslitigation.com

**APPELLANT'S STATEMENT REGARDING MATERIALS REQUIRED BY CIRCUIT RULE 30(a) and 30(b)**

The Appellant, by Counsel, hereby certifies to the Court that all materials required by Circuit Rules 30(a) and (b) are included in the Appendix to Appellant's Brief.

/s/Adam Lenkowsky
Adam Lenkowsky

Adam Lenkowsky
**ROBERTS LITIGATION GROUP**
118 North Delaware Street
Indianapolis, Indiana 46204
Telephone:  (317) 631-0172
Facsimile:  (317) 631-0178
Email:       alenkowsky@robertslitigation.com

**No. 21-3158**

_____

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

_____

| | | |
|---|---|---|
| **KRISTIE ANN ALLEY,** | ) | **Appeal from the United States** |
| | ) | **District Court, Southern District** |
| **Plaintiff-Appellant,** | ) | **of Indiana** |
| | ) | |
| **vs.** | ) | **Cause No. 1:20-cv-00117-RLY-DLP** |
| | ) | |
| **PENGUIN RANDOM HOUSE,** | ) | **Honorable Richard L. Young,** |
| | ) | **Judge; Honorable Doris L. Pryor,** |
| **Defendant-Appellee.** | ) | **Magistrate Judge** |

_____

**Appendix – Circuit Rule 30(a)**

_____

Adam Lenkowsky, Ind. Atty. No. 24277-49
**ROBERTS LITIGATION GROUP**
118 North Delaware Street
Indianapolis, Indiana 46204
Telephone: (317) 631-0172
Fax:  (317) 631-0178
Email: alenkowsky@robertslitigation.com

Attorney for Appellant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KRISTIE ANN ALLEY,                    )
                                      )
                    Plaintiff,        )
                                      )
        v.                            )        No. 1:20-cv-00117-RLY-DLP
                                      )
PENGUIN RANDOM HOUSE,                 )
                                      )
                    Defendant.        )

## ORDER

This matter comes before the Court on Defendant's Motion to Dismiss Count
II of Plaintiff's Amended Complaint, Dkt. [14]. The parties consented to the
Magistrate Judge's authority to resolve this motion, and on March 18, 2020 the
Defendant's Motion to Dismiss was referred to the Undersigned. (Dkts. 21, 25). The
motion is now fully briefed and ripe for decision. For the reasons that follow,
Defendant's Motion to Dismiss is **GRANTED**.

## I.    Background

On January 23, 2020,  Plaintiff filed an Amended Complaint, alleging that she
had worked for Defendant Penguin Random House ("Penguin") since August 2014.
(Dkt. 5 at 2). Plaintiff asserts that she was demoted after she assisted a coworker in
reporting allegations of sexual harassment. (Dkt. 5). Plaintiff further claims that
the Defendant retaliated against her in violation of Title VII of the Civil Rights Act
of 1964, and that she was wrongfully demoted in violation of the Defendant's Code
of Conduct. (Id.). In the parties' proposed case management plan, Plaintiff's case

1

synopsis indicated that Defendant's actions "violated her rights to be free from retaliation under Title VII, as well as constituted a state law wrongful demotion." (Dkts. 17, 23). On March 2, 2020, Defendant filed a Motion to Dismiss Count II of Plaintiff's Amended Complaint, arguing that Plaintiff failed to state a claim upon which relief can be granted. (Dkt. 14). Plaintiff filed a response on March 18, 2020, and Defendant filed a reply on March 25, 2020. (Dkts. 22, 30).[1]

## II.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits the dismissal of a claim for "failure to state a claim upon which relief can be granted." *Wright v. Thompson*, No. 4:12-CV-10-RLY-WGH, 2012 WL 2401532, at *1 (S.D. Ind. June 25, 2012); Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not the merits of the lawsuit. *Wright*, 2012 WL 2401532, at *1; *U.S. v. Clark Cty., Ind.*, 113 F. Supp. 2d 1286, 1290 (S.D. Ind. 2000) (citing *Gibson v. City of Chi.*, 910 F.2d 1510, 1520-21 (7th Cir. 1990)).

To survive a motion to dismiss, "a plaintiff's complaint must contain [factual] allegations that plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Jakupovic v. Curran*, 850 F.3d 898, 901 (7th Cir. 2017); *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in favor of

---

[1] The Plaintiff filed a surreply on March 26, 2020. S.D. Ind. Local Rules do not contemplate surreplies for Motions to Dismiss. As such, Plaintiff's surreply (Dkt. 32) was not considered in this decision.

the plaintiff. *Bielanski v. Cty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008); *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

### III.   Analysis

Defendant argues that Count II of Plaintiff's Amended Complaint should be dismissed because wrongful demotion is not a recognized cause of action under Indiana common law. (Dkt. 15 at 3). If the Court does not dismiss Count II outright, Defendant requests that the Court decline to exercise supplemental jurisdiction over Count II so that an Indiana state court can interpret Plaintiff's attempt to create a novel theory of Indiana common law. (Id. at 5).

In response, Plaintiff does not dispute that no cause of action exists for wrongful demotion in Indiana. Instead, Plaintiff maintains that she is not asserting a common law wrongful demotion claim, but rather a claim for breach of unilateral contract based on an employee Code of Conduct she received in the course of her employment with the Defendant. (Dkt. 22 at 1). Plaintiff notes that she "is an at-will employee who has been given limited contractual rights through a unilateral contract consisting of the Code of Conduct." (Id. at 4, n. 1).

In its reply, Penguin notes that Plaintiff has argued for the first time that her claim is for breach of contract. (Dkt. 30 at 1-2) Defendant further argues that the Court should not permit Plaintiff "to escape dismissal by both relying on and disclaiming at-will principles to reformulate a new theory outside the language and labels of her Amended Complaint." (Id. at 3).

Before the Court can consider whether Plaintiff's Count II has merit and can proceed, it must first be determined what claim Plaintiff actually makes in Count II of her Amended Complaint. Count II is titled "Wrongful Demotion" and claims to be brought under "the Common Law of the State of Indiana." (Dkt. 5 at 1, 5). Count II notes that the employee Code of Conduct contained a clear promise that "intimidation or retaliation against employees who in good faith provide reports of suspected or actual misconduct must not be tolerated." (Id. at 5). This promise, Plaintiff argues, would reasonably lead an employee to believe that an offer had been made and, in fact, led Plaintiff to rely upon this promise in return for agreeing to work for Penguin. (Id.). The Court first acknowledges that Plaintiff chose to title Count II as "Wrongful Demotion" and describe it as an Indiana common law claim. Further, Plaintiff uses language exclusive to promissory estoppel cases in explaining her cause of action. In her response brief, the Plaintiff now argues that she is pursuing a breach of contract claim in Count II, and not a promissory estoppel or wrongful demotion claim. Nowhere in the five sentences of Count II of the Amended Complaint does Plaintiff mention that she considers the Code of Conduct a contract, or that she experienced a breach of this alleged unilateral contract.

In responding to a Rule 12(b)(6) motion, a party may elaborate on her factual allegations and submit additional facts to support that claim, as long as the new elaborations are consistent with the pleadings. *Geinosky v. City of Chicago*, 675 F.3d

743, n. 1 (7th Cir. 2012). In this case, however, Plaintiff appears to be using facts that support a claim inconsistent with the pleadings.

Based on the language in the Complaint, along with the Plaintiff's assertion in the proposed Case Management Plan that Count II represents a state law wrongful demotion claim, Plaintiff's response urging the Court to construe her claim as one for breach of a unilateral contract rings hollow. Plaintiff clearly uses promissory estoppel language to support her alleged breach of contract claim. Further compounding the confusion, in her brief the Plaintiff only cites cases and doctrines that address a party's termination; in this case, however, Plaintiff was never terminated and still remains employed with Penguin. The Court has yet to locate a state or federal case that extends the protections that Plaintiff alleges to a wrongful demotion claim.

Due to the multiple conflicting representations, the Court is somewhat perplexed by the Plaintiff's argument here. The Court could reasonably interpret Plaintiff's Count II as a state law wrongful demotion claim, as one for promissory estoppel, or as one for breach of contract. In her response brief, Plaintiff refutes Defendant's assertion that she is pursuing a claim of promissory estoppel as an exception to employment at-will, and instead maintains that she is pursuing a contract claim based on the Defendant's Code of Conduct. (Dkt. 22 at 2). As support for this claim, Plaintiff exclusively cites cases that confront the question of whether an employee handbook can create a promissory estoppel exception to the employment at-will doctrine. (Dkt. 22 at 3-4).

If Plaintiff's Count II follows the reasoning of every case she cites in support of her argument, she would be pursuing a claim that the Code of Conduct operates as one of the exceptions to the employment at-will doctrine. Plaintiff's concession that she was and still remains an at-will employee forestalls that line of argument – if Plaintiff was an at-will employee, she cannot also be an exception to the at-will employment doctrine. (Dkt. 22 at 4, n. 1).

Under her primary theory, Plaintiff asserts that the Code of Conduct constitutes a valid unilateral employment contract that was violated when she was demoted. Plaintiff uses the language of an Illinois Supreme Court case in her Amended Complaint to support this claim, arguing that the Defendant violated a clear promise that was laid out in the Code of Conduct. (Dkt. 5). The *Duldulao* rule states:

> [A]n employee handbook may constitute a unilateral contract and bind the employer if the following three criteria are met: (1) the language of the employee handbook must contain a promise clear enough that an employee would reasonably believe that an offer had been made; (2) the employee handbook must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing work after learning of the terms of the employee handbook.

*Harris v. Brewer*, 49 N.E.3d 632, 640 (Ind. Ct. App. 2015) (citing *Duldulao v. Saint Mary of Nazareth Hosp. Center*, 115 Ill.2d 482, 505 N.E.2d 314, 318 (1987)). Multiple Indiana courts have addressed *Duldulao*, but no Indiana court or related federal court has adopted the *Duldulao* factors or otherwise held that an employee handbook or code of conduct can constitute a unilateral employment contract. *See Cmty. Found. of Nw. Indiana, Inc. v. Miranda*, 120 N.E.3d 1090, 1100 (Ind. Ct. App.

6

2019).  Moreover, *Duldulao* has only been weighed by Indiana courts to determine

whether to find a new exception to the at-will doctrine for employee handbooks.

*Hayes v. Trustees of Indiana Univ.*, 902 N.E.2d 303, 312 (Ind. Ct. App. 2009).

Again, the Court finds it prudent to note that Plaintiff continues to overlook

the point that she was never terminated, and continues to be employed by Penguin.

Every case cited by Plaintiff, and found by this Court, addresses whether a separate

employment document, such as a handbook or code of conduct, can constitute a

valid unilateral contract that creates a promise related to the employer's obligations

when terminating the employee. In other words, the cases evaluate whether an

exception to the at-will doctrine exists.

Nevertheless, this Court will attempt to evaluate Plaintiff's full allegations.

In this particular case, Plaintiff points to one sentence in the Code of Conduct that

creates an alleged promise: namely that intimidation or retaliation for reporting

wrongdoing must not be tolerated within Penguin. (Dkt. 5). There is no mechanism

within this Code of Conduct for enforcing that alleged promise and there are no

provisions related to discipline, demotion, or termination. This Code of Conduct

appears to be a set of personnel policies, insofar as the vast majority of the

document purports to tell the employee how she should behave with coworkers and

customers to ensure the reputation and integrity of Penguin Random House. These

are general behavioral guidelines for employees, akin to a personnel policy, rather

than an employee handbook that outlines processes and procedures for discipline

and termination. Furthermore, the Code of Conduct's back cover states that the

most current version of the Code of Conduct can be found on the Penguin website, indicating that the terms are constantly subject to revision by Penguin. (Dkt. 5-1 at 48); *Miranda*, 120 N.E.3d at 1100.

The mere fact that the handbook sets out certain employee policies does not convert the handbook into an employment contract. *See Wynkoop v. Town of Cedar Lake*, 970 N.E.2d 230, 236 (Ind. Ct. App. 2012) ("Following *Orr*, this Court has declined to construe personnel policies as converting an individual's employment from an at-will relationship" to a contract.), *trans. denied; see also Harris v. Brewer*, 49 N.E.3d 632, 642 (Ind. Ct. App. 2015) (finding that the handbook "would not constitute a valid unilateral contract as it does not contain a clear promise of secure employment"), *trans denied*.

In light of the Indiana courts' clear precedent, this Court similarly declines Plaintiff's invitation to adopt *Duldulao* in this case; even if this Court were to adopt the factors, Plaintiff could not meet them here. There is no clear promise of secure employment, let alone for employment secure from potential demotion. There is only a sentence indicating that intimidation and retaliation must not be tolerated. The other handbooks considered by the Indiana courts involved provisions that outlined performance reviews, grievance procedures, and disciplinary processes, with a plaintiff alleging that the employer terminated her without following those procedures. *See Harris*, 49 N.E.3d at 641-42 (collecting cases). Here, however, there is only a vague pledge that retaliation must not be tolerated. That is not enough to constitute a clear promise on which an employee could reasonably rely. As a result,

this Court cannot find that the Code of Conduct constitutes a valid unilateral contract.

Wrongful demotion is not a recognized cause of action; Plaintiff was and remains an at-will employee and, therefore, cannot bring a claim for breach of contract and is not subject to any exceptions to the at-will employment doctrine; and the Code of Conduct does not constitute a valid unilateral contract. As such, irrespective of under which theory the Court construes Plaintiff's Count II, the claim fails.

## IV.    Conclusion

For the foregoing reasons, the Court concludes that Count II of the Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted. As such, Defendant's Motion to Dismiss Count II of Plaintiff's Amended Complaint, Dkt. [14], is **GRANTED**, and Count II is dismissed.

So ORDERED.

Date: 11/23/2020

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KRISTIE ANN ALLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-00117-RLY-DLP |
| | ) | |
| PENGUIN RANDOM HOUSE, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Kristie Ann Alley, filed the present lawsuit against her then-employer, Penguin Random House, alleging she was demoted in retaliation for reporting sexual harassment and is entitled to punitive damages. Penguin now moves for summary judgment. For the reasons explained below, Penguin's motion is **GRANTED**.

I.     **Background**

A.     **Alley's Employment with Penguin**

Penguin operates a shipping warehouse in Crawfordsville, Indiana, where it processes returned books and prepares them for shipment to new buyers. (Filing No. 60-3, Mann Decl., ¶ 3). Alley became a full-time employee of Penguin in August 2014 and worked as an Order Processor-Level 1 ("OP-1") in the returns department. (Filing No. 60-1, Alley Dep. at 15-16; Filing No. 61-1, Mann Dep. at 23).

Alley received several promotions and eventually assumed the role of Group Leader on July 27, 2016. (Alley Dep. at 20, 22, 26). Group Leaders serve as a liaison between line employees and supervisors. (Mann Dep. at 16). Penguin treats Group

Leaders as management because they are responsible for reallocating employees and monitoring production.  (*Id.* at 20).  Penguin holds Group Leaders to a higher standard and expects them to ensure other employees are following the rules and performing quality work.  (*Id.* at 21).  As a Group Leader, Alley reported to Zach Link.  (*Id.* at 34).  Group Leaders Elizabeth Hennessy and Scott Lillard also reported to Link.  (*Id.*).

### B.    Penguin's Anti-Harassment Policy

Penguin has an anti-harassment policy, which instructs that "[a]ny employee who believes they have been subject to conduct in violation of this policy (or who witnesses or learns about such conduct), including by another employee . . . should report such conduct immediately to their manager, department head or division head, or to a Human Resources representative."  (Alley Dep., Ex. 2 at 1-2).  The policy also provides that "[e]mployees wishing to report potential violations of this policy anonymously can report to the ombudsperson."  (Alley Dep. at 49 & Dep. Ex. 2 at 2).  Penguin provides training to Group Leaders on how to handle allegations of sexual harassment and expects them to report such allegations to their supervisor, who would then report it to Human Resources. (Mann Dep. at 59-60).

### C.    Guzman Reports Harassment by Lillard

On September 13, 2019, Marlene Guzman orally reported to Alley that she felt she was being sexually harassed by Lillard.  (*Id.* at 95-96).  At that time, Guzman was an OP-1 under Group Leader Hennessy.  (*Id.* at 101).  At Alley's request, on September 16, 2019, Guzman provided her a written statement putting forth Guzman's allegations

against Lillard.  (*Id*. at 98-99 & Dep. Ex. 5 at ¶ 20).  Alley also collected a statement from

Megan Haines, Guzman's roommate and coworker.  (Alley Dep. at 113-14).

The following day, September 17, 2019, Alley attempted to call the ombudsperson

to make a report.  (*Id.* at 51, 54, 65-66).  Penguin was not aware of Plaintiff's attempts to

call the ombudsperson.  (Mann Dep. at 125).

### D.   Human Resources Learns of Lillard's Harassment, Questions Alley, and Asks Her to Write a Statement

On September 18, 2019, Emily Felix informed Human Resources that Guzman

complained Lillard had sexually harassed her.  (*Id.* at 119-20).  This was the first time

Penguin learned any allegations of sexual harassment by Lillard.  (*Id.* at 122).  Mike

Brock, the assistant director over Service Area and Returns (and Link's supervisor),

began an investigation the morning of September 19, and spoke to both Guzman and

Haines.  (*Id.* at 56, 118, 120).  Guzman also submitted a statement detailing her

allegations against Lillard, as well as a corroborating statement from Haines.  (*Id.* at 120).

On that same day, September 19, 2019, the Director of Human Resources at the

Crawfordsville facility, Bonnie Mann, and the highest-level person at the Crawfordsville

facility, Senior Vice President Lori DeReza, met with Alley to determine whether there

was anything she needed to discuss.  (Alley Dep. at 112; Mann Dep. at 7-8 & Dep. Ex.

42).  Alley disclosed for the first time that she had received statements from Guzman and

Haines with allegations of sexual harassment by Lillard, and that she had reached out to a

former employee, Ashton Pendleton, who also accused Lillard of sexual harassment.

(Alley Dep. at 112-14).  At Mann and DeReza's request, Alley emailed them copies of

3

the statements from Guzman and Haines.  (*Id.* at 100-01, 114).  Mann and DeReza

thanked Alley for bringing the information forward.  (*Id.* at 145-46).  Penguin suspended

Lillard's employment the following day, September 20, 2019.  (Mann Dep. at 71).

Days later, Brock spoke with Alley about her own personal experiences with

Lillard and asked her to prepare a statement.  (Alley Dep. at 80 & Dep. Ex. 4; Mann Dep.

at 123).  In the statement, Alley claimed that Lillard sexually harassed her from 2015 to

October 2018, and that he was arrogant and "had an attitude."  (Alley Dep. at 83-85 &

Dep. Ex. 4 at 2-3).

Alley's written statement prompted Brock to request a statement from Group

Leader Cole Golladay.  (Mann Dep. at 63).  On September 25, 2019, Golladay sent an

email to Brock confirming that Alley told him in 2017 that Lillard had sexually harassed

her.  (Alley Dep. at 179-80; Mann Dep., Ex. 34).  Lillard was terminated from his

employment with Penguin on September 25 or 26, 2019.  (Mann Dep. at 81).

Golladay was not disciplined for failing to report Alley's allegations against

Lillard.  (Mann Dep. at 64).  Mann explained that more than two years had passed since

Alley's report to Golladay, Lillard had since been terminated, and Penguin "just [wanted]

to keep things at status quo."  (Mann Dep. at 64).

### E.    Alley's Demotion

On September 27, 2019, Alley met with Brock and DeReza to discuss Alley's

performance.  (Alley Dep. at 138).  They informed Alley that she had put employees and

Penguin at risk by failing to report Guzman's sexual harassment allegations against

Lillard and removed Alley from her Group Leader position. (Filing No. 60-4, Brock Decl., ¶ 4).

### F.    Alley's Management Journal

An employee's Management Journal documents employment-related issues and occurrences (like a promotion), and includes a column where the employee's supervisor can designate the entry with a "G", "B," or "N" (which presumably means good, bad, or neutral). (*See, e.g.,* Mann Dep. Ex. 29). Alley's entries for March 4, August 19, and August 23, 2019, were changed from "N" to "B." (*Compare* Mann Dep. Ex. 29, *with* Mann Dep. Ex. 31). The substance of the journal entries remained the same. (*Compare* Mann Dep. Ex. 29, *with* Mann Dep. Ex. 31).

### G.    Alley Resigns

Following her demotion, Alley took an extended medical leave of absence, and returned to work on April 1, 2020, as a forklift operator. (Alley Dep. at 132, 140, 148; Mann Dep. at 35). Alley submitted her resignation to Penguin on July 1, 2020, and her last day was July 12, 2020. (Alley Dep. at 141; Mann Dep. at 35).

## II.    Summary Judgment Standard

**S**ummary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact" and that the "movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the evidence. *Johnson v. Advocate Health & Hosp. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

Instead, the court must construe the facts and draw all reasonable inferences in the light most favorable to the non-moving party.  *Id*.  A genuine dispute as to a material fact exists if, based on the evidence presented, a reasonable jury could find in favor of the non-moving party.  *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 661 (7th Cir. 2016).

## III.   Discussion

### A.     Retaliation

Title VII forbids an employer from discriminating against an employee who has "opposed any practice" made unlawful by Title VII or who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 20003-3(a).  To survive summary judgment on a claim of unlawful retaliation, a plaintiff must produce evidence from which a reasonable jury could find that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse action.  *Abrego v. Wilkie*, 907 F.3d 1004, 1014 (7th Cir. 2018).  The court must "consider the evidence as a whole and conduct a straightforward inquiry: Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the [materially adverse action]?"  *Id.* (quoting *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016).   It is undisputed that Alley suffered an adverse employment action when she was demoted.

This case comes down to whether Alley's report of discrimination on Guzman's behalf caused her demotion.  Causation can be established by circumstantial evidence,

6

including "suspicious timing, a pretextual reason for the termination, and evidence that similarly situated employees were treated differently." *Id.* (citing *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016)).

Alley was demoted eight days after she made her report to Mann and DeReza. Although suspicious timing is rarely sufficient to create an inference of retaliatory motive, it can raise an inference when combined with other evidence. According to Alley, she meets this burden by showing she was treated differently than Group Leader, Cole Golladay. She has also produced evidence that Penguin changed three entries in her Management Journal.

Alley's evidence that her Management Journal entries were changed does not move the needle in her favor. The supervisor who wrote them had the option of designating the journal entries as "G/B/N." The entries at issue were dated March 4, August 19, and August 23, 2019, and were designated with the letter "N" but were changed to "B." Link's initials were by the March 4 entry, and Brock's were by the August 19 and August 23 entries. (*See, e.g.*, Mann Dep., Ex. 31).

There are several problems with this evidence. First, Alley says her journal entries were changed from "good" to "bad" and, as support for her assertion, she cites to the deposition of Mann. But Mann did not testify that Alley's journal entries were changed from "good" to "bad." Rather, she testified Brock told her he "might have put N for not

good versus B for bad or vise versa" and that, after Brock noticed Link had done the

same thing, Link "made the correction."[1]  (Mann Dep. at 55).

Second, there is no evidence as to when these entries were changed.  This

omission is significant because the entry dates preceded Guzman's complaints of

harassment to Alley.

Lastly, the journal entries—the content of which never changed—could

reasonably be described as "bad."  For example, on March 4, Link noted he had received

an email that Alley tried to fix a jam by walking up the conveyor rather than call

maintenance.  (*See* Mann Dep., Ex. 31).  On August 19, Brock noted that he and DeReza

had spoken to Alley about the way she is perceived by her peers, noting she "comes

across as opinionated," "can be negative at times," "needs to develop humbleness," and

"does not come across as a team player."  (*Id.*).  And on August 23, Brock noted he and

DeReza had decided to remove Alley from the backup supervisor role—a position she

shared with other Group Leaders while Link was on paternity leave—so she could focus

on the issues raised on August 19.  (*Id.*; Alley Dep. at 35).  Thus, this evidence is not

indicative of retaliatory animus.

Alley's similarly situated evidence is a closer call.  The similarly situated inquiry is

a flexible, common-sense, factual inquiry that asks whether "there are enough common

features between the individuals to allow a meaningful comparison."  *Coleman v.*

---

[1] Curiously, Link testified he never made any changes to Alley's journal entries nor did he
authorize anyone to do so.  (Filing No. 64-4, Link Aff. ¶¶ 3-4).

*Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012).  "In other words, the proposed comparator must be similar enough to permit a reasonable juror to infer, in light of all the circumstances, that an impermissible animus motivated the employer's decision."  *Id.* Relevant factors include whether "the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."  *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000).

Golladay, like Alley, was a Group Leader who learned of sexual harassment by a co-worker (Alley) but failed to timely report it.  Golladay was not demoted, Mann explained, because more than two years had passed since Golladay learned of Alley's sexual harassment complaint and by that time, the perpetrator of the harassment— Lillard—had been terminated.  Alley, on the other hand, engaged in her own investigation and contacted a former employee without informing either Human Resources or upper management.  Mann testified her actions were "highly inappropriate," as it is "Human Resources and management's place to do an investigation."  (Mann Dep. at 125).  But in the end, both Golladay and Alley, who held the same job position, failed to report.

Viewing the evidence as a whole, the court finds no reasonable juror could conclude that Penguin retaliated against Alley for reporting Guzman's allegations of harassment.  As a Group Leader, Alley was obligated to report Guzman's allegations to Brock, DeReza, and/or Mann.  She failed to do so and took it upon herself to conduct her

own investigation without telling anyone.  By the time Alley admitted on September 20

that Guzman complained to her about Lillard, Felix had already brought the allegations to

Penguin's attention, and Guzman and Haines had already provided Penguin copies of

their written statements.  Penguin suspended Lillard's employment, conducted its own

investigation, and terminated Lillard's employment a week later.  Felix, Guzman, and

Haines engaged in protected activity but did not suffer an adverse employment action.

Given these circumstances, why would Penguin retaliate against Alley for reporting

Guzman's allegations of harassment?  Her theory does not make sense.  Accordingly,

Penguin is entitled to summary judgment on Alley's retaliation claim.

### B.      Punitive Damages

To be entitled to punitive damages under Title VII, a plaintiff must present

evidence that her employer acted with malice or reckless indifference towards her rights.

*Bruso v. United Airlines, Inc.*, 239 F.3d 848, 857 (7th Cir. 2001).  This requires a

preliminary showing that the employer acted "in the face of a perceived risk that its

actions will violate federal law." *Id.* (internal quotation marks and citation omitted).

Punitive damages are not warranted here, as Alley failed to raise a genuine issue of

material fact on whether Penguin demoted her because she failed to report Guzman's

allegations of sexual harassment.  Therefore, Penguin is entitled to summary judgment on

Alley's claim for punitive damages.

### IV.   Conclusion

For the reasons explained above, the court hereby **GRANTS** Penguin's Motion for

Summary Judgment (Filing No. 59).  Final judgment shall issue forthwith.

**SO ORDERED** this 3rd day of November 2021.


RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana


Distributed Electronically to Registered Counsel of Record.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KRISTIE ANN ALLEY,                      )
                                        )
                    Plaintiff,          )
                                        )
             v.                         )        No. 1:20-cv-00117-RLY-DLP
                                        )
PENGUIN RANDOM HOUSE,                   )
                                        )
                    Defendant.          )

## FINAL JUDGMENT

Today, the court granted Defendant's Motion for Summary Judgment.  Final

judgment is therefore entered in favor of Defendant and against Plaintiff.

**SO ORDERED** this 3rd day of November 2021.


                                        RICHARD L. YOUNG, JUDGE
                                        United States District Court
Roger Sharpe, Clerk                     Southern District of Indiana
United States District Court

_____
By: Deputy Clerk


Distributed Electronically to Registered Counsel of Record.