No. 21-3158

_____

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

_____

KRISTIE ANN ALLEY,
Plaintiff-Appellant,

v.

PENGUIN RANDOM HOUSE,
Defendant-Appellee.

_____

Appeal from the United States District Court
For the Southern District of Indiana, Indianapolis Division
Case No. 1:20-cv-00117-RLY-DLP
The Honorable District Court Judge Richard L. Young
The Honorable Magistrate Judge Doris L. Pryor

_____

BRIEF OF THE DEFENDANT-APPELLEE, PENGUIN RANDOM HOUSE LLC

_____

JACKSON LEWIS, P.C.
Michael W. Padgett
Cheyna H. Galloway
211 North Pennsylvania Street, Suite 1700
Indianapolis, Indiana 46204
Tel: (317) 489-6930
Fax: (317) 489-6931
Email: Michael.Padgett@jacksonlewis.com
        Cheyna.Galloway@jacksonlewis.com

Attorneys for Defendant-Appellee,
Penguin Random House LLC

SEVENTH CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No:     **21-3158**

Short Caption:     **Alley v. Penguin Random House**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3): **Penguin Random House LLC**

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court: **Jackson Lewis P.C.**

(3)     If the party or amicus is a corporation:

  (i) Identify all its parent corporations, if any: **Bertelsmann**

  (ii) list any publicly held company that owns 10% or more of the party's or amicus' stock: **None**

Attorney's Signature: <u>s/ Michael W. Padgett</u>     Date: <u>April 28, 2022</u>

Attorney's Printed Name:  **Michael W. Padgett**

Are you *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d)? **Yes**.

Address:     **Jackson Lewis P.C., 211 North Pennsylvania Street, Suite 1700, Indianapolis, Indiana 46204**

Phone Number:  **317-489-6930** / Fax Number:  **317-489-6931**

E-mail Address:     **Michael.Padgett@jacksonlewis.com**

## Table of Contents

Seventh Circuit Rule 26.1 Disclosure Statement ............................................................. i

Table of Authorities ............................................................................. iii-iv

Jurisdictional Statement ....................................................................... 1

Statement of the Case .......................................................................... 1-2

Summary of Argument ......................................................................... 2-4

Argument ......................................................................................... 4-16

    I.   The district court properly granted Penguin's motion to dismiss Alley's state law breach of contract claim. .................................................................. 4-5

        A. An employee handbook or code of conduct is not a unilateral employment contract under Indiana law. ........................................................... 5-9

        B.  Alley cannot pursue a breach of contract claim because she conceded she is an at-will employee and because her employment was not terminated. . 9-12

        C. Even if the Code of Conduct established a contractual obligation, the evidence does not support a finding of a breach of the obligation    12

    II.   The district court properly granted Penguin's motion for summary judgment as to Alley's Title VII claim. ................................................................ 13

        A. There is no suspicious timing to support the retaliation claim. ............ 13-14

        B. Alley's comparator evidence does not support her retaliation claim. ... 14-15

        C. Alley's Management Journal entries do not show retaliatory motive. . 15-16

Conclusion ........................................................................................ 17

Certificate of Compliance with Type-Volume Limit.................................... 18

Certificate of Service............................................................................ 19

Table of Authorities

**Page(s)**

**Federal Cases**

*Coleman v. Donahoe,*
    667 F.3d 835 (7th Cir. 2012) ................................................................. 15

Erie. R. Co. v. Tompkins, 304 U.S. 64 (1938) ........................................... 5

*Felder v. Casey,*
    487 U.S. 131 (1988) ("Under *Erie R. Co.* v. *Tompkins*, 304 U.S. 64
    (1938)) ........................................................................................................ 5

*Firestone v. Standard Management Corp.,*
    2005 U.S. Dist. LEXIS 15471 (S.D. Ind. July 5, 2005) ......................... 6

*Gracia v. Sigmatron Int'l, Inc.,*
    842 F.3d 1010 (7th Cir. 2016) ............................................................... 13

*Hiatt v. Crown Prods. & Servs., Jones v. GE,*
    87 F.3d 209 (7th Cir. 1996) ..................................................................... 5

*Magyar v. St. Joseph Reg'l Med. Ctr.,*
    544 F.3d 766 (7th Cir. 2008) ................................................................. 13

*O'Leary v. Accretive Health, Inc.,*
    657 F.3d 625 (7th Cir. 2011) ................................................................. 13

**State Cases**

*Cmty. Found. Of Northwest Ind., Inc. v. Miranda,*
    120 N.E. 3d 1090 (Ind. App. 2019) ........................................................ 7

*Duldulao v. St. Mary of Nazareth Hosp. Ctr.,*
    505 N.E. 2d 314 (Ill. 1987) ....................................................... 7, 8, 11, 12

*Duty v. Boys & Girls Club of Porter Co.,*
    23 N.E.3d 768 (Ind. App. 2014) .............................................................. 7

*Harris v. Brewer,*
    49 N.E.3d 632 (Ind. App. 2015) .............................................................. 7

*Majd Pour v. Basic American Medical, Inc.,*
    512 N.E.2d 435 (Ind. Ct. App. 1987) ............................................... 5, 6, 9

*Meyers v. Meyers,*
    861 N.E.2d 704 (Ind. 2007) ............................................................... 9, 10

*Orr v. Westminster Village North, Inc.*,
    689 N.E.2d 712 (Ind. 1997) ............................................................................. 6, 7

*Wynkoop v. Town of Cedar Lake*, 970 N.E.2d 230 (Ind. App. 2012) ............................ 8

## JURISDICTIONAL STATEMENT

The jurisdictional statement of Plaintiff-Appellant Kristie Ann Alley ("Alley") is complete and correct.

## STATEMENT OF THE CASE[1]

Defendant-Appellee, Penguin Random House LLC ("Penguin"), notes there are three statements of fact included in the Brief and Required Short Appendix of Plaintiff-Appellant, Kristie Ann Alley ("Appellant's Brief") without citations to the record and responds to those statements as follows:

- "Interestingly, Alley's Management Journals also changed during this time period." (Appellant's Brief, p. 7.)

This statement is asserted without any citation to the record and without defining "this time period." As noted in Appellant's Brief, Alley first printed her 2019 Management Journal between August 23 and August 29, 2019. (See record citations at Appellant's Brief, p. 7.) Alley then printed the 2019 Management Journal again on September 29, 2019, which reflected changes in the letter entries assigned to comments. (See record citations at Appellant's Brief, pp. 7-8.) As a result, the changes in the letter entries could have occurred anywhere between August 23, 2019, and September 29, 2019.

---

[1] Citations to the record on appeal appear throughout as "(R. _xx_)," with xx representing the district court docket number. Page numbers cited for deposition transcripts are to the pages of the actual deposition, not the filing number at the top of the page. Page numbers cited for deposition exhibits, which do not have separate pagination, are to the filing numbers at the top of the page. For instance, for a deposition exhibit, (R. 34-2, p. 13) refers to page 13 of docket number 34.

- "As noted above, PRH was aware of sexual harassment concerns with Lillard as a result of the interviews with Sutton and Danek." (Appellant's Brief, p. 8.)

This statement is asserted without any citation to the record and misstates the testimony in the record. Penguin's Director of Human Resources, Bonnie Mann, testified that the interviews conducted by Sutton and Danek disclosed complaints about Lillard's communication and management styles, but no allegations of sexual harassment. (R. 64-1, p. 76:1-16.) Penguin was not aware of any allegations of sexual harassment against Lillard until it received Marlene Guzman's complaint on September 18, 2019, which was after the Sutton and Danek interviews. (R. 64-3, p. 118:24-119:1; R. 64-1, p. 76:17-21 and p. 119:24-120:2.)

- "However, it was not until PRH had received a written statement, prepared at the request of Alley, that it took action." (Appellant's Brief, p. 8.)

This statement is asserted without any citation to the record, is speculation rather than a statement of fact, and fails to cite any evidence that Penguin would not have taken action against Lillard in the absence of a written statement.

## SUMMARY OF ARGUMENT

The District Court properly dismissed Count II of Alley's Amended Complaint, concluding it failed to state a claim upon which relief could be granted. (R. 52.) Count II of Alley's Amended Complaint brought a claim of "Wrongful Demotion." (R. 5, p. 5.) In response to Penguin's Motion to Dismiss Count II of the Amended Complaint,

Alley asserted for the first time she was bringing a breach of contract claim in Count II. (R. 22.) Given the language in the Amended Complaint, the District Court noted that Alley's "response urging the Court to construe her claim as one for breach of a unilateral contract rings hollow." (R. 52, p. 5.)

Nonetheless, the District Court analyzed the cases cited by Alley and properly concluded that no Indiana court or related federal court has held that an employee handbook can constitute a unilateral employment contract. (R. 52, p. 6.) The District Court further noted that Alley conceded she was an at-will employee, forestalling a claim for breach of contract or a claim based on an exception to the at-will employment doctrine.

On appeal, Alley simply repeats the same arguments made to the District Court, citing cases that further reinforce the conclusion that Penguin's Code of Conduct is not a contract. Appellant's Brief offers no rationale for reversing the decision of the District Court regarding Count II of the Amended Complaint.

The District Court also properly granted Penguin's Motion for Summary Judgment on Alley's retaliation claim. (R. 79.) To establish a retaliation claim, Alley must show she engaged in protected activity and Penguin took an adverse employment action because of the protected activity. In this case, however, Penguin demoted Alley for failing to report harassment. In other words, Penguin demoted Alley for failing to engage in protected activity.

Even if she engaged in protected activity, Alley fails to show retaliatory animus. Contrary to Alley's argument, there is no suspicious timing involved in this matter. Penguin demoted Alley as soon as it learned of her failure to report. There

is nothing suspicious about that. Indeed, Penguin's actions were specifically designed to ensure that employees promptly report any alleged harassment to the company.

Additionally, Alley's purported comparator evidence involving another Group Leader, Cole Golladay, misses the mark. Alley must show that a similarly situated employee outside of her protected class was treated better. Golladay and Alley were in the same protected class, or more accurately lack of protected class, because both failed to report harassment. Golladay does not serve to demonstrate retaliatory motive.

Finally, changes to Alley's 2019 Management Journal are not persuasive evidence of retaliation. Alley cites to changes in a one-letter designation next to comments in the Management Journal. First, the negative comments were not changed in any way and were entered in the Management Journal before any alleged protected activity by Alley. Moreover, there is no record evidence to show the changes in the one-letter designation occurred after Alley's alleged protected activity. Alley cannot prove retaliatory intent without showing the changes occurred not only *after* her protected activity but also *because of* her protected activity. The evidence does not support either of these conclusions.

## ARGUMENT

### I. The district court properly granted Penguin's motion to dismiss Alley's state law breach of contract claim.

The District Court properly granted Penguin's motion to dismiss Alley's breach of contract claim because (i) an employee handbook or code of conduct is not a unilateral employment contract under Indiana law, (ii) Alley concedes she is an at-

will employee and Indiana law does not recognize an exception to the at-will employment doctrine for employment policies, and (iii) even if such a claim were cognizable, there is no evidence Penguin breached any obligation imposed by the Code of Conduct.

A. *An employee handbook or code of conduct is not a unilateral employment contract under Indiana law.*

Alley fails to cite any Indiana legal authority establishing that an employee handbook, code of conduct or other employment policy is a unilateral employment contract. The reason for this omission is simple; there is none. As noted by the District Court, "no Indiana court or related federal court has adopted the *Duldulao* factors or otherwise held that an employee handbook or code of conduct can constitute a unilateral employment contract." (R. 52, p. 6.) In short, Alley is asking this Court to ignore Indiana law and create a new state law cause of action, something this Court cannot do. *Felder v. Casey,* 487 U.S. 131, 151 (1988) ("Under *Erie R. Co.* v. *Tompkins*, 304 U.S. 64 (1938), when a federal court exercises diversity or pendent jurisdiction over state-law claims, 'the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.'")

Indiana law is explicit as to the requirements for an employment contract. For an employment contract to be valid and enforceable, four elements are needed: (1) the place of employment; (2) the period of employment; (3) the nature of services the employee is to render; (4) and the compensation the employee is to receive. *Majd Pour v. Basic American Medical, Inc.*, 512 N.E.2d 435, 439 (Ind. Ct. App. 1987); *Hiatt*

5

*v. Crown Prods. & Servs., Jones v. GE,* 87 F.3d 209, 213 (7th Cir. 1996); *Firestone v. Standard Management Corp.*, 2005 U.S. Dist. LEXIS 15471 *12 (S.D. Ind. July 5, 2005).

Penguin's Code of Conduct does not meet any of the four elements of an employment contract. Rather, it is a general set of policies applicable to all employees, at all Penguin locations, employed during different time periods, in different roles, and with varying levels of compensation. The Code of Conduct looks nothing like an employment contract and does not purport to serve as an employment contract. It certainly does not meet the requirements of Indiana law under *Majd Pour* to comprise an employment contract.

Alley's only argument that the Code of Conduct is a unilateral contract is that the policies contained therein are akin to a contract offer, and Alley's employment constituted both acceptance of and consideration for the "offer." This argument ignores the true offer made by Penguin. Alley was offered at-will employment, which she accepted. The Code of Conduct only applied to Alley after she accepted Penguin's employment offer. Alley's performance of work for Penguin was acceptance and consideration for the offer of employment, not the "offer" of the Code of Conduct. In short, the Code of Conduct is simply a set of employment policies, not an employment contract.

Demonstrating the lack of support for her claim, Alley cites *Orr v. Westminster Village North, Inc.,* 689 N.E.2d 712 (Ind. 1997) for the proposition that the Code of Conduct created a unilateral employment contract. *Orr* contains precisely the opposite holding. There, the Indiana Supreme Court specifically "decline[d] plaintiffs'

invitation to construe employee handbooks as unilateral contracts." *Orr* has been consistently relied upon by Indiana courts to hold that employment policies do not amount to employment contracts. *Cmty. Found. Of Northwest Ind., Inc. v. Miranda*, 120 N.E. 3d 1090, 1099 (Ind. App. 2019) ("The *Orr* court also stated that it was going to 'decline plaintiffs' invitation' to use that case to determine whether an employee handbook 'can ever constitute a unilateral contract serving to modify the otherwise at-will employment relationship.'"); *Harris v. Brewer,* 49 N.E.3d 632, 640 (Ind. App. 2015) ("Although Indiana courts have addressed *Duldulao* in *Orr* and several subsequent cases, we have never adopted the *Duldulao* factors or otherwise held that an employee handbook may constitute a unilateral employment contract."); *Duty v. Boys & Girls Club of Porter Co.,* 23 N.E.3d 768, 772 (Ind. App. 2014) ("But Duty mischaracterizes our supreme court's holding in *Orr.* In that case, the court explicitly *declined* the plaintiffs' invitation to recognize 'a broad new exception to the at-will doctrine for employee handbooks.'" (emphasis in original)).

The only authority Alley cites in support of her claim of a unilateral employment contract is an Illinois Supreme Court case, *Duldulao v. St. Mary of Nazareth Hosp. Ctr.,* 505 N.E. 2d 314 (Ill. 1987). As an initial matter, *Duldulao* states, "Several courts have rejected the notion that an employee handbook or manual can ever create binding contractual obligations," and then lists those courts, including an Indiana case. *Id.* at 316-17. In other words, *Duldulao* itself acknowledges that an employee handbook does not create contractual obligations in Indiana.

Moreover, *Duldulao* has been specifically considered and rejected by the Indiana Supreme Court in *Orr* and by subsequent Indiana appellate courts. Simply

stated, *Duldulao* may be established law in Illinois, but Indiana courts have specifically declined to adopt its holding regarding unilateral employment contracts. Appellants' Brief implies that an Indiana court recognized *Duldulao*, stating, "*Wynkoop*, 970 N.E. 2d at 235-236, later applied the so-called *Duldulao Rule* in Indiana without questioning its existence." Of course *Wynkoop* did not "question the existence" of *Duldulao*. No court could "question the existence" of *Dudldulao*. It most certainly *exists* but exists as Illinois law. Indiana courts have explicitly opted not to follow the reasoning of *Duldulao*.

Appellant's Brief concedes that "Indiana case law has generally found that employee handbooks do not create unilateral contracts," but goes on to state "the Code of Conduct is not an employee handbook and contains significant differences." As an initial matter, it is not clear if Alley is arguing that the title of the document – Code of Conduct – somehow separates it from an employee handbook. To the extent that is indeed an argument advanced, it is clearly focused on form over substance and without merit. Both an employee handbook and the Code of Conduct are simply collections of employment policies, and there is no substantive difference between the two.

Moreover, in arguing the purported differences between the Code of Conduct and employee handbooks, Alley cites cases that examine whether an employee handbook can create an exception to the employment at-will doctrine. Alley has already conceded that she is employed at-will and no exception applies. Additionally, none of the cited cases find the employee handbook at issue creates an exception to the employment at-will doctrine.

8

Finally, the last page of the Code of Conduct notes a revision date of August 2019 and instructs employees to visit the webpage noted "[f]or the most current version of the Code of Conduct." (R. 5-1, p. 48.) This direction clearly places employees on notice that the Code of Conduct is subject to change at Penguin's discretion.

Indeed, if the Code of Conduct is a contract as alleged by Alley, Penguin would be unable to make any revisions to the document without individually negotiating the revisions with each and every employee. Moreover, every communication from an employer to its employees regarding any policy would become a contract under the approach advanced by Alley. An e-mail to employees changing a shift start time would be transformed into a binding contract for those employees who remained employed after the change. The e-mail would comprise an "offer" and continued employment would constitute acceptance and consideration. As such, any subsequent change in shift times would permit an employee to pursue a breach of contract claim in a court of law. Indiana law, through *Majd Pour* and its progeny, avoids these impracticalities by requiring more than a simple offer, acceptance and consideration in order to form an employment contract.

### B. Alley cannot pursue a breach of contract claim because she conceded she is an at-will employee and because her employment was not terminated.

Indiana follows the employment-at-will doctrine, which permits both the employer and the employee to terminate the employment at any time for a "good reason, bad reason, or no reason at all." *Meyers v. Meyers*, 861 N.E.2d 704, 706 (Ind. 2007). Alley concedes she is an at-will employee. (*See* R. 22, p. 4, fn. 1, stating "Alley

does not claim to be a contractual employee.  She is an at-will employee who has been given limited contractual rights through a unilateral contract consisting of the Code of Conduct.")  As such, she concedes her employment could be terminated for a "good reason, bad reason, or no reason at all," which would include a reason for termination that runs counter to the employer's own policies.  Alley appears to argue that while her employment could be terminated for any reason, she could not be *demoted* in violation of an employer policy.  Alley's argument further turns itself on its own head by asserting simultaneously that she "does not claim to be a contractual employee" but "has contractual rights through a unilateral contract."  The argument collapses from the weight of its own inconsistencies.

By admitting she is an at-will employee, Alley admits she could be terminated for any reason and she could certainly be demoted for any reason.  Even if her demotion was contrary to Penguin's policies, Alley would not have a cause of action because she can be lawfully terminated – *or demoted* – for a "good reason, bad reason, or no reason at all."  *Meyers,* 861 N.E.2d at 706.

Even if Alley had not conceded her status as an at-will employee, she cannot show that her circumstances fall within an exception to the at-will employment doctrine.  None of the Indiana cases cited in Appellant's Brief hold that an employee handbook or other collection of employment policies can create an exception to the employment at-will doctrine.  And as the District Court pointed out, "it [is] prudent to note that Plaintiff continues to overlook the point that she was never terminated," but rather demoted.  (R. 52, p. 7.)  While Alley cites cases addressing a potential exception to the at-will employment doctrine, those cases are not instructive in the

present circumstances.   First, Penguin never terminated Alley's employment. Second, Alley concedes she was an at-will employee, so no exception applies.

It should also be noted that the *Duldulao* case Alley relies on was decided in the context of the at-will employment doctrine.  Plaintiff in that case alleged her employment was terminated in violation of detailed handbook language providing protections for employees from indiscriminate firing.  The *Duldulau* court noted it was using "the general 'employment-at-will rule' as a rule of construction, mandating only a presumption that a hiring without a fixed term is at will, a presumption which can be overcome by demonstrating that the parties contracted otherwise." *Duldulao,* 505 N.E.2d at 318.  The court specifically addressed the question of whether the handbook language created contractual obligations related to termination of employment that could defeat the employment at-will doctrine.  As such, *Duldulao* should not be read to mean every employment policy adopted by an employer – no matter the subject - results in a binding contract.  For the same reason, it should not be read to conclude that a demotion allegedly in violation of an employer policy creates a cause of action for breach of contract.  In short, even if it were Indiana law, *Duldulao* is not applicable in this case because Alley concedes she was employed at-will and this case involves demotion rather than termination of employment.

Finally, the District Court noted even if the *Duldulao* factors were relevant, they do not mitigate in favor of finding a unilateral contract in this instance. *Duldulao* requires a promise clear enough that the employee reasonably believes an offer has been made.  The Code of Conduct language cited by Alley simply states that retaliation for reporting misconduct must not be tolerated.  There is no mechanism

to enforce the alleged promise and no assurance that anyone reporting misconduct will not be disciplined, demoted or terminated. The language does not establish clear obligations on which to base a contract claim. Alley's only argument under *Duldulao* is that the Code of Conduct does not contain any "disclaimers, exceptions, or contradictory language." (Appellant's Brief, p. 13.) But *Duldulao* does not require disclaimers, exceptions or contradictory language to escape a binding contract. A general policy statement that retaliation must not be tolerated is not enough under *Duldulao*. And as noted above, even if such general language was sufficient under *Duldulao,* it would only serve as an exception to the at-will employment doctrine.

C. *Even if the Code of Conduct established a contractual obligation, the evidence does not support a finding of a breach of the obligation.*

The District Court granted Penguin's motion for summary judgment as to Alley's Title VII retaliation claim, finding that no reasonable juror could conclude that Penguin retaliated against Alley for reporting allegations of harassment. Rather, Alley was removed from the Group Leader position because she failed to report alleged harassment. Alley's breach of contract claim is based on the same facts as her Title VII retaliation claim. Specifically, she alleges she was removed from the Group Leader position for reporting harassment, in violation of the Code of Conduct. For the same reasons discussed below, the District Court properly found there is not sufficient evidence to show the reason for Alley's demotion was her report of alleged harassment. As a result, even if Alley could advance a claim for breach of contract, she cannot prove her demotion constituted a breach of contract and Penguin is entitled to judgment as a matter of law.

12

II.   **The district court properly granted Penguin's motion for summary judgment as to Alley's Title VII claim.**

The District Court properly granted Penguin's motion for summary judgment as to Alley's Title VII retaliation claim. Alley alleges she was demoted in retaliation for reporting allegations of harassment. As the record evidence clearly shows, Penguin demoted Alley because she *failed to report harassment allegations.* Alley's proffered evidence in support of her claim is insufficient and Penguin is entitled to judgment as a matter of law.

A. *There is no suspicious timing to support the retaliation claim.*

Alley notes she was demoted eight days after she told Penguin that a co-worker had been sexually harassed. "'[R]etaliatory motive may be established through circumstantial evidence such as suspicious timing, ambiguous statements, evidence that the stated reason for the employment decision is pretextual and' other evidence from which an inference of discriminatory intent might be drawn." *Gracia v. Sigmatron Int'l, Inc.,* 842 F.3d 1010, 1019 (7th Cir. 2016). "Although suspicious timing alone is rarely enough to create an inference of retaliatory motive, it can sometimes raise an inference of a causal connection, especially in combination with other evidence." *Gracia,* 842 F.3d at 1021 (*citing Magyar v. St. Joseph Reg'l Med. Ctr.,* 544 F.3d 766, 772 (7th Cir. 2008); *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 635 (7th Cir. 2011).

It is not timing alone at issue in analyzing whether a retaliatory motive is present. The question is whether there is *suspicious timing.* Here, there is no suspicious timing. The timing of Alley's demotion in relation to the alleged protected

13

activity only exists because the demotion resulted from Plaintiff *failing* to engage in protected activity. This is far different than, for example, an employee who is terminated for poor performance shortly after filing an EEOC charge. There, no relation exists between the protected activity and the adverse employment action. Here, Alley was demoted for failing to report harassment. The timing of the demotion decision is tied to when Penguin learned of Alley's failure to report alleged harassment and there is nothing at all suspicious about the timing.

### B. Alley's comparator evidence does not support her retaliation claim.

In support of her retaliation claim, Alley argues another Group Leader, Cole Golladay, failed to report harassment but was not demoted. This argument fails for several reasons.

First, the argument concedes that Alley failed to engage in protected activity, thereby negating her retaliation claim. Alley notes "group leader Golladay failed to report that Lillard had sexually harassed Alley" and this failure to report "for a period of over two years" placed more Penguin employees at risk "compared to Alley's six days." (Appellant's Brief, p. 14.) Alley's argument is she and Golladay engaged in the same conduct and he was not demoted. The same conduct, however, was failure to report harassment. Once Alley concedes she failed to report harassment (the purported protected activity underlying her retaliation claim), she cannot pursue a claim of retaliation.

Second, her purported comparator evidence ignores the fact that other employees reported harassment by Lillard at the same time as Alley without consequences. In September 2019, Emily Felix, Megan Haines and Marlene Guzman

14

all reported harassment by Lillard. (Appellant's Brief, pp. 6-7.) None of these employees were disciplined in any way or otherwise discouraged from reporting harassment. Golladay also reported harassment by Lillard at the same time (albeit very late) without consequence. Far from evidence of retaliation, the fact that these employees were not disciplined for reporting harassment shows Penguin does not retaliate.

Finally, Golladay does not serve as a proper comparator. A plaintiff may seek to prove discriminatory or retaliatory intent by showing "that a similarly situated employee outside her protected class received more favorable treatment." *Coleman v. Donahoe,* 667 F.3d 835, 841 (7th Cir. 2012). While Golladay and Alley are similarly situated because they engaged in the same conduct, Golladay is not outside of Alley's protected class. Both failed to report harassment. However, even if we were to concede Alley engaged in protected activity by reporting harassment but doing so too late, the same is true of Golladay. He also reported harassment by Lillard close in time to when Alley arguably reported harassment by Lillard; he just did so later than Alley. Either way, Alley and Golladay are in the same protected class (or lack of protected class because they failed to report harassment). Golladay's treatment is not evidence of retaliation. To be sure, Golladay could serve as a comparator for a discrimination claim (*e.g.*, a claim Alley was demoted because of her gender), but he is not a comparator for purposes of a retaliation claim.

C.    *Alley's Management Journal entries do not show retaliatory motive.*

The District Court properly noted that the timing of the Management Journal entries does not support a finding of retaliatory intent. The Management Journal

entries in question were made on March 4, August 19, and August 23, 2019, and all contained negative information regarding Alley's job performance. (R. 79, pp. 7-8.) Each of these entries were made prior to Alley's September 19, 2019 meeting with Mann and DeReza in which she finally disclosed that Guzman reported harassment to her. These negative comments in March and August 2019 could not possibly have been motivated by Alley's report on September 19, 2019.

Alley also cites to a one-letter designation being changed next to the three entries. As an initial matter, the comments were negative before the change in the one-letter designation and remained negative after the change. The changes in the one-letter designation do not show retaliatory animus, regardless of when the changes were made.

Perhaps more importantly, there is no evidence the changes in the one-letter designation occurred after the September 19, 2019 meeting, and therefore could have been motivated by Alley's statements in the meeting. Alley first printed the Management Journal between August 23 and August 29, 2019. Alley then printed the Management Journal again on September 29, 2019, which reflected changes in the one-letter entries assigned to comments. As a result, the changes in the one-letter entries could have occurred anywhere between August 23, 2019, and September 29, 2019. The evidence does not establish the changes in the one-letter entries occurred after the alleged protected activity. Therefore, the changes in the Management Journal entries are not evidence of retaliation.

<u>CONCLUSION</u>

For the reasons set forth above, this appeal lacks merit and the District Court's decision to grant Penguin's motion to dismiss and motion for summary judgment should be affirmed.

Respectfully submitted,

Dated:  April 28, 2022                              Penguin Random House


By <u>/s/ Michael W. Padgett</u>
   One of Its Attorneys

Michael W. Padgett
Jackson Lewis P.C.
211 North Pennsylvania Street, Suite 1700
Indianapolis, Indiana 46204
Tel: 317.489.6930
Fax: 317.489.6931
Email: Michael.Padgett@jacksonlewis.com

<u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

The undersigned counsel of record hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief contains 4,409 words in combined text and footnotes, excluding the Table of Contents, Table of Authorities, Rule 26.1 Certificate of Interest, and Certificates of Compliance, which are exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  In making this certification, the undersigned counsel relies on the word-count feature of the Microsoft Word software used to prepare this brief.

By: <u>/s/ Michael W. Padgett</u>

Michael W. Padgett
Jackson Lewis P.C.
211 North Pennsylvania Street
Suite 1700
Indianapolis, Indiana 46204
Tel: 317-489-6930
Fax: 317-489-6931
Email: Michael.Padgett@jacksonlewis.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 28, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


By:  <u>/s/Michael W. Padgett        </u>


4855-7514-2429, v. 1

19