No. 21-3158

---

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

---

| | | |
|---|---|---|
| **KRISTIE ANN ALLEY,** | ) | Appeal from the United States |
| | ) | District Court, Southern District |
| Plaintiff-Appellant, | ) | of Indiana |
| | ) | |
| vs. | ) | Cause No. 1:20-cv-00117-RLY-DLP |
| | ) | |
| **PENGUIN RANDOM HOUSE,** | ) | Honorable Richard L. Young, |
| | ) | Judge; Honorable Doris L. Pryor, |
| Defendant-Appellee. | ) | Magistrate Judge |

---

Appeal from the United States District Court
for the Southern District of Indiana
Case No. 1:20-cv-00117-RLY-DLP
The Honorable Judge Richard L. Young
The Honorable Magistrate Judge Doris L. Pryor

---

**REPLY BRIEF OF
PLAINTIFF-APPELLANT, KRISTIE ANN ALLEY**

---

Adam Lenkowsky, Ind. Atty. No. 24277-49
**ROBERTS LITIGATION GROUP**
118 North Delaware Street
Indianapolis, Indiana 46204
Telephone: (317) 631-0172
Fax:  (317) 631-0178
Email: alenkowsky@robertslitigation.com

Attorney for Appellant

# TABLE OF CONTENTS

Table of Contents..................................................................................ii

Table of Authorities.............................................................................iii

Response to PRH's Statement of the Case.......................................1

Argument..............................................................................................2

    A. The District Court Erred in Granting PRH's Motion to Dismiss..........2
    B. The District Court Erred in Granting PRH's Motion for Summary
       Judgment......................................................................................5

Conclusion............................................................................................8

Certificate of Compliance...................................................................9

Certificate of Service.........................................................................10

# TABLE OF AUTHORITIES

<u>Cases</u>

*Abrego v. Wilkie*, 907 F.3d 1004 (7th Cir. 2018)..............................................5,6

*Casey v. State*, 676 N.E.2d 1069 (Ind. Ct. App. 1997).....................................4

*Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314 (Ill. 1987)......2,3

*Harris v. Brewer*, 49 N.E.3d 632 (Ind. Ct. App. 2015).......................................3

*Hayes v. Trustees of Indiana University*, 902 N.E.2d 303 (Ind. Ct. App. 2009)....4

*Hoosier Energy Rural Elec. v. Amoco Tax Leasing*,
34 F.3d 1310 (7th Cir. 1994).................................................................................4

*Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312 (7th Cir. 2011)......................6

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)..................................5

*Milligan-Grimstad v. Stanley*, 877 F.3d 705 (7th Cir. 2017)..............................6

*Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712 (Ind. 1997).................2,3

*Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016).......................5,7

*Uhlman v. Panares*, 908 N.E.2d 650 (Ind. Ct. App. 2009)..............................3

*Wynkoop v. Town of Cedar Lakes*, 970 N.E.2d 230 (Ind. Ct. 2012)..................3

<u>Secondary Sources</u>

WEBSTER'S COLLEGIATE DICTIONARY 999 (10th ed.1993)..........................4

**RESPONSE TO PRH'S STATEMENT OF THE CASE**

Penguin Random House (PRH) does not detail its own Statement of the Case, but merely objects to a few statements of facts made by Kristie Alley (Alley). First, PRH object to Alley's statement that her Management Journals were changed "during this time period." (Brief of Appellee at p. 1) Alley's Brief merely stated that the Management Journals were changed sometime between August 23, 2019 and September 29, 2019. (Brief of Appellant at pp. 7-8) This time period could have included the relevant period, after September 19, 2019.

Second, PRH objects to Alley's claim that it was already aware of sexual harassment concerns. (Brief of Appellee at p. 2) However, Alley designated evidence that in July or August of 2019, PRH had interviewed a number of female employees about Scott Lillard (Lillard) and they had reported feeling "uneasy" and "uncomfortable" about him, and that he treated women differently than men. (Dkt. 64-1 at 73, 77) Alley also designated evidence that Lillard had been advised to "refrain[] from physical contact or comments of a personal nature that could be misinterpreted." (Dkt. 64-1 at 86, 87)

Lastly, PRH objects to Alley's statement that PRH took no action until after it had received a written statement prepared at the request of Alley. (Brief of Appellee at p. 2) There is no dispute about this. Alley requested and received a written statement from Marlene Guzman (Guzman) and it was not until PRH became aware of this that Alley was demoted. (Dkt. 64-2; 64-3 at 113, 112:8-20; 64-3 at 115, 114:12-19) PRH can argue, as it does, that the timing is not suspicious. However, the timeline itself is undisputed.

**ARGUMENT**

**A. The District Court Erred in Granting PRH's Motion to Dismiss**

First, PRH argues that the Code of Conduct does not constitute an employment contract under Indiana law and as such, Alley was simply an at-will employee. (Brief of Appellee at pp. 5-6, 9-10) However in *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 717 (Ind. 1997), the Indiana Supreme Court noted that the question was not whether the employee was a contractual employee, but "whether the Handbook served to convert plaintiffs' otherwise at-will employment relationship with Westminster into an employment relationship that required Westminster to terminate them only for good cause." Nothing in *Orr* suggested that the "good cause" language in the employee handbook could be disregarded merely because the handbook did not contain specific information about place, period, nature of employment, and compensation.

This is because Alley does not argue that she was a traditional contractual employee, but that the Code of Conduct gives her certain contractual rights as a unilateral contract that an employee-at-will would not ordinarily have. At such, and contrary to PRH's claims, Alley is a hybrid employee-at-will. Generally, Alley is an employee-at-will, however, she may not be disciplined in violation of certain rights created in the Code of Conduct.

Second, PRH argues that *Orr* declined to construe an employee handbook as a unilateral contract. (Brief of Appellees at pp. 6-7) Peculiarly, PRH argues that *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314 (Ill. 1987) cites Indiana law that rejects unilateral contract theory. (Brief of Appellee at 7)

However, obviously *Duldulao* predates *Orr*, which concluded the matter was unresolved. *Orr*, 689 N.E.2d at 722, concluded "even if we were to adopt an exception to the at-will doctrine, Westminster's Handbook does not constitute a clear offer supporting a binding unilateral contract because its language regarding progressive discipline procedures is suggestive rather than mandatory and because the Handbook includes a prominent disclaimer and was accompanied by a second disclaimer, which is referenced in the Handbook and which was signed by plaintiffs." In other words, while *Orr* did not specifically adopt application of unilateral contracts in employment under Indiana law, it "did not foreclose the possibility of" finding an employee handbook "may constitute a unilateral contract" by applying *Duldulao* factors. *Harris v. Brewer*, 49 N.E.3d 632, 641 (Ind. Ct. App. 2015).

PRH cites a number of cases allegedly for the proposition that an employee handbook is not a unilateral contract. (Brief of Appellee at p. 7) However, all of these cases reach the same conclusion as *Orr*: that Indiana law has not resolved the issue. In *Wynkoop v. Town of Cedar Lakes*, 970 N.E.2d 230 (Ind. Ct. 2012), however, the Indiana Court of Appeals applied unilateral contract analysis to an employment case without questioning whether it would apply *under Indiana law.*

Third, PRH argues that a statement in the Code of Conduct that it is the most updated version means that it can be changed any time. (Brief of Appellee at p. 11) *Uhlman v. Panares*, 908 N.E.2d 650, 655 (Ind. Ct. App. 2009) explains that "An employee handbook bearing or accompanied by disclaimers that the handbook is not a contract, generally, as a matter of law, does not create a

3

unilateral contract." However, this is not even close to a disclaimer. It provides no information about previous versions or the process by which it can be changed. In *Hayes v. Trustees of Indiana University*, 902 N.E.2d 303, 305 (Ind. Ct. App. 2009), the disclaimer provided that the employer could "*at any time*...modify, to change, to suspend, or to cancel all or any part of the policies, procedures, and programs contained in this manual." (Emphasis added) Here, the Code of Conduct merely states that it is "the most current version." (Dkt. 5-1 at p. 48)

Related to this, PRH argues that such a result would mean that PRH would have to negotiate with employees every time they wanted to change their policies. (Brief of Appellee at p. 9) Regardless of whether this was the case, it was self-inflicted. It is not this Court's job to rewrite policies for an employer that might have been unwise. See *Hoosier Energy Rural Elec. v. Amoco Tax Leasing*, 34 F.3d 1310, 1317 (7th Cir. 1994) ("courts are to enforce, not rewrite contacts.")

Fourth, PRH argues without citation to authority that Alley's claim is barred because she was not terminated but demoted. (Brief of Appellee at p. 11) However, the Code of Conduct unambiguously prohibits retaliation. (Dkt. 5-1 at p. 13) Retaliation means "to repay in kind; to return for like; to get revenge." *Casey v. State*, 676 N.E.2d 1069, 1072 (Ind. Ct. App. 1997) (quoting WEBSTER'S COLLEGIATE DICTIONARY 999 (10th ed.1993)). Further, a termination is merely an extension of a demotion. Retaliation is clearly protected under the Code of Conduct.

4

Fifth, PRH argues that the Code of Conduct does not contain a clear promise that employees will not be disciplined in retaliation. (Brief of Appellee at pp. 11-12) Contrary to PRH's claims, retaliation is not just not "tolerated," but also "prohibited." (Dkt. 5-1 at p. 13) This is a "binding minimum standard." (Dkt. 5-1 at p. 7) Further, PRH's assertion that there is no clear promise because there is no enforcement mechanism is without merit. Clearly enforcement of an act taken in violation of a rule that is "prohibited" is some sort of discipline of the retaliating employee and recission of the retaliatory act. This is so obvious that it need not be spelled out.

Lastly, PRH argues that since the District Court granted Summary Judgment on Alley's Title VI claim, the state law retaliation claim must fail as well. (Brief of Appellee at p. 12) However, for reasons stated below, there is a genuine issue of material fact as to why Alley was demoted.

### B. The District Court Erred In Granting PRH's Motion for Summary Judgment

PRH attempts to apply principles from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to an *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016) world. By doing this, it misses the fundamental holding of *Ortiz*, 834 F.3d at 765: that the Plaintiff's burden is not to demonstrate a formulaic existence of certain elements, but instead to produce evidence that considered as a whole would permit a reasonable factfinder to conclude that an adverse employment action was taken on account of a proscribed factor. In so doing, a Plaintiff may demonstrate factors including, but not limited to, suspicious timing, a pretextual explanation for the adverse action, and evidence that

similarly situated employees were treated differently. *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018).

     PRH argues that the timing of Alley's demotion was not suspicious because it came on the heels of learning that Alley had failed to report sexual harassment. (Brief of Appellee at pp. 13-14) But it also occurred eight days after PRH had learned that Alley was assisting a coworker who had been sexually harassed by Lillard. See *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 711 (7th Cir. 2017) (timing suspicious where adverse action occurred only days later).

     While PRH correctly states that suspicious timing alone is rarely sufficient, the facts here demonstrate more than that. PRH claims that Cole Galloday (Galloday) is not a comparator because he also failed to report sexual harassment. (Brief of Appellee at p. 15) Regardless of whether Galloday was a comparator, the fact that he was not disciplined when failed to report sexual harassment tends to show that PRH's claim that Alley was disciplined because she allegedly failed to report was pretextual. Alley's alleged failure to report was only a matter of days. Galloday's was years, resulting in additional women being harassed. Given PRH's failure to discipline Galloday for the alleged same conduct, their claim that Alley was demoted for failure to report is "fishy enough to support an inference that the real reason must be discriminatory." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011).

     PRH further argues that its motive could not have been retaliatory because it did not retaliate against other employees who assisted Guzman. (Brief of Appellee at pp. 14-15) This peculiar argument suggests that PRH does not

retaliate against every single employee, but is irrelevant to whether PRH retaliated against Alley. Moreover, there is a logical reason why PRH would retaliate against Alley but not other employees: Alley was the prime mover in procuring a written statement from Guzman that she had been harassed by Lillard. Once this statement was in writing, it could not be covered up. Designated evidence shows that oral statements had been made by female employees that they were uncomfortable with Lillard and Lillard's personnel file contained references to him being instructed not have inappropriate physical contact with other employees, yet no action was taken until a letter by an employee was produced.

Lastly, PRH argues that the changes in Alley's Management Journal do not show retaliatory motive. (Brief of Appellee at pp. 15-16) First, the suspicious timing and pretextual explanation are alone sufficient to create a triable issue of material fact. Second, the changes, considered as a whole with other evidence, provide additional indicia of discriminatory intent. *Ortiz*, 834 F.3d at 765. It is not clear when exactly the change in the journals were made, but it is clear that they could have occurred after September 19, 2019. Further, even if the content was negative, PRH could have decided at the time they were entered that it was not necessary to classify it as negative and potentially effect the employment of a long-time employee. Instead, after Alley had told PRH about Lillard, it is

plausible that PRH could have attempted to build a record against her to demote her.[1]

## CONCLUSION

For the foregoing reasons, Alley requests the Court to reverse the decision of the District Court and remand for Trial.

Respectfully submitted,

**ROBERTS LITIGATION GROUP**

/s/ Adam Lenkowsky
Adam Lenkowsky, Ind. Atty. No. 24277-49

*Attorney for Appellant Kristie Ann Alley*

Adam Lenkowsky
**ROBERTS LITIGATION GROUP**
118 North Delaware Street
Indianapolis, IN 46204
Telephone:   (317) 631-0172
Facsimile:   (317) 631-0178
Email:       alenkowsky@robertslitigation.com

---

[1] Ironically, PRH later acknowledged that the reason for her demotion was only her alleged failure to report sexual harassment. (Dkt. 60-4 at 2; Dkt. 64-1 at 34, 131:22-132:24)

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. Pro 32(a)(7) because it contains 1,954 words, excluding the parts of the brief exempted by Fed. R. App. Pro. 32(f). This brief complies with the typeface requirements of Fed. R. App. Pro. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Word in 12-point font and Bookman Old Style.

                                               /s/Adam Lenkowsky
                                               Adam Lenkowsky

Adam Lenkowsky
**ROBERTS LITIGATION GROUP**
118 North Delaware Street
Indianapolis, IN 46204
Telephone:  (317) 631-0172
Facsimile:  (317) 631-0178
Email:  alenkowsky@robertslitigation.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served by electronic service on the following counsel of record on this 11th day of May, 2022:

/s/Adam Lenkowsky
Adam Lenkowsky

Adam Lenkowsky
**ROBERTS LITIGATION GROUP**
118 North Delaware Street
Indianapolis, IN 46204
Telephone:  (317) 631-0172
Facsimile:  (317) 631-0178
Email:         alenkowsky@robertslitigation.com